114 P.3d 917

**Eugene James HUTCH, Petitioner–Appellant,**

**v.**

**STATE of Hawaiʻi, Respondent–Appellee.**

**No. 25711.**

Supreme Court of Hawaiʻi.

June 29, 2005.

Eugene James Hutch, On the briefs, petitioner-appellant, pro se.

Lisa M. Itomura, Deputy Attorney General, State of Hawai'i, On the briefs, for respondent-appellee.

MOON, C.J., LEVINSON, ACOBA, and DUFFY JJ.; With NAKAYAMA, J., concurring separately and dissenting.

Opinion of the Court by ACOBA, J.

Petitioner–Appellant *pro se* Eugene Hutch (Appellant) appeals from a March 13, 2003 order of the circuit court of the first circuit (the court)[1] denying his Hawai'i Rules of Penal Procedure (HRPP) Rule 40 petition for post-conviction relief to vacate, set aside, or correct judgment or to release Appellant from custody. We vacate that part of the order relating to Appellant's "lockdown" in a

1. The Honorable Wilfred K. Watanabe presided.

2. In his Rule 40 petition, Appellant asserted six grounds to support his claim that he was "being

special holding facility, and remand that aspect of the petition to the court for hearing. As to Appellant's claim that he was improperly refused access to a prison guidebook and medically prescribed shoes, we affirm the court's denial of a Rule 40 hearing but remand that part of the petition for disposition under the civil rules.

.I.

In the course of Appellant's incarceration at Halawa Correctional Facility, several inmates filed paperwork requesting approval for Appellant's legal assistance. On April 5, 2002, prison staff confiscated "unauthorized property" from Appellant's cell that consisted of legal size envelopes with the names of other inmates listed on them. These inmates allegedly did not follow the procedures established by prison staff for requesting assistance from a fellow inmate. Appellant was sentenced to fourteen days' lockdown in the Special Holding Unit of the facility for failure to obtain proper authorization prior to helping these inmates in their legal matters.

On June 10, 2002, Appellant filed the first of a series of requests to the warden that he be allowed to receive gym shoes delivered for him on the grounds that the shoes were medically necessary. In support of his request, Appellant produced a prison medical staff memo dated May 29, 2002, stating that he may wear the shoes "for medical reasons."

On June 24, 2002, Appellant received a letter from Deborah Bezilla, an administrative assistant at a private law office, stating that the 2002 edition of the Federal Prison Guidebook (Federal Prison Guidebook) that had been ordered, paid for, and sent for delivery to Appellant in prison, had been returned to the law office because it had been refused delivery at the address given.

Appellant has filed numerous claims and appeals against Respondent–Appellee State of Hawai'i (the State) while incarcerated.

On July 8, 2002, Appellant filed his Rule 40 petition,[2] seeking relief on the grounds of (1)

held unlawfully." First, he claimed that prison authorities "hindered" his "efforts to pursue a legal claim ... where [the] warden refuse[d] to

illegal punishment resulting from (a) the application of a repealed prison rule and (b) an unconstitutional restriction against "helping inmates,"[3] (2) denial of access to the courts,[4] and (3) retaliatory conduct on the part of prison staff.[5] Appellant requested that the court (1) order the prison staff to release him from the Special Holding Unit and (2) expunge all alleged instances of misconduct for helping inmates "gain adequate, effective, and meaningful access to the courts."

On March 13, 2003, the court issued an order denying the petition. The court determined that "[Appellant's] claims are without merit, [are] patently frivolous, and [are] without support in either the record or evidence submitted by [Appellant]." The court did not file any findings of fact or conclusions of law.[6] Appellant filed a notice of appeal on March 21, 2003.

On appeal, Appellant challenges the court's decision as "allow[ing] the [p]rison [s]taff to hinder[ his] access to the courts by denying [him] up-to-date [l]aw [b]ooks, [g]ym [s]hoes required by the [f]oot [d]octor, and us[ing] retaliation against [him] to enforce ... HAR § 17–202–1(b)." He also emphasizes that he "is now in the Special Holding Unit" and reiterates general arguments on "the right of access to the courts."[7]

## II.

HRPP Rule 40(a)(1) (2002) describes the grounds upon which relief from judgment may be sought. It states:

(1) *From Judgment.* At any time but not prior to final judgment, any person may seek relief under the procedure set forth in this rule from the judgment of conviction, on the following grounds:

(i) that the judgment was obtained or sentence imposed in violation of the consti-

---

allow [Appellant] to receive [a copy of the] 2002 Federal Prison Guidebook and [medically prescribed] gym shoes." Second, he argued that even though Hawai'i Administrative Rules (HAR) § 17–202–1(b), governing mutual assistance between inmates on legal matters, was repealed on April 15, 2000, the prison staff continues to enforce the rule. In support of this second ground, he stated that (1) the warden had approved his assisting another inmate, Aua Pedro, (2) the staff went into his prison cell and confiscated legal documents, and (3) Appellant "is now in [the] holding unit."

In his third ground, Appellant maintained that "the above shows retaliation herein." As supporting facts for this third ground, he stated that allowing "the prison staff to enforce rules repealed shows misconducts [sic] on [Appellant's] record and [Hawai'i Revised Statutes (HRS) § ] 706–669(4) will show [Appellant] will not be considered for parole of continuous exemplary behavior in prison." Fourth, Appellant argued that the prison staff's refusal to allow him to receive the 2002 Federal Prison Guidebook was unconstitutional because it denied him access to "the new case law," thereby "hinder[ing Appellant's] efforts to pursue a legal claim[.]"

In his fifth ground, Appellant asserted that even though HAR § 17–202–1(b) was repealed effective April 15, 2000, Appellant was still punished "for helping inmates[.]" He restated the facts used to support his second ground in greater detail, clarifying that he "is now in the Special Holding Unit for helping inmates" and that "by being locked-up in the Special Holding Unit stops [him] from taking classes in the Learning Center" such as parenting classes and 'AA' meetings." Finally, in his sixth ground, Appellant

claimed that by denying him receipt of the 2002 Federal Prison Guidebook, the prison staff "hindered [his] efforts to pursue a legal claim[.]" He restated facts previously mentioned, reiterating his concern that "what [he] do[es] in [p]rison ... will continue to hinder [his] consideration for [p]arole." Additionally, Appellant requested that the court order the prison staff to release him from the Special Holding Unit and to "expunge" all alleged prison "misconducts for helping inmates try and gain adequate, effective, and meaningful access to the courts."

3. This represents "Ground two" and "Ground five" as stated in Appellant's Rule 40 petition.

4. This consolidates "Ground one," "Ground four," and "Ground six" as listed on Appellant's Rule 40 petition.

5. This is "Ground three" of Appellant's Rule 40 petition.

6. Inasmuch as there are no recorded findings by the court, the argument by the State that Appellant did not specifically challenge the court's "implicit findings of fact" is without merit.

7. The State argues that Appellant's claims concerning alleged retaliation, inability to attend various classes, and denial of a pair of shoes are not argued in the opening brief and should be deemed waived. However, we find his opening brief to be sufficient and, in light of our *de novo* review, *see infra*, will consider his arguments as made in both his appellate briefs and Rule 40 petition.

tution of the United States or State of Hawaii;

(ii) that the court which rendered the judgment was without jurisdiction over the person or subject matter;

(iii) that the sentence is illegal;

(iv) that there is newly discovered evidence; or

(v) any ground which is a basis for collateral attack on the judgment.

HRPP Rule 40(a)(2) (2002) outlines the grounds upon which challenges to custody may be made. It states:

> *From Custody.* Any person may seek relief under the procedure set forth in this rule from custody based upon a judgment of conviction, on the following grounds:
>
> (i) that the sentence was fully served;
>
> (ii) that parole or probation was unlawfully revoked; or
>
> (iii) *any other ground making the custody, though not the judgment, illegal.*

(Emphasis added.) Additionally, HRPP Rule 40(f) (2002) provides, in relevant part, as follows:

> *Hearings. If a petition alleges facts that if proven would entitle the petitioner to relief,* the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is *patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner.* The court may also deny a hearing on a specific question of fact when a full and fair evidentiary hearing upon that question was held during the course of the proceedings which led to the judgment or custody which is the subject of the petition or at any later proceeding.

(Emphases added.) Accordingly, a hearing on a Rule 40 petition is required whenever the allegations in a petition, if taken as true, (1) would change the verdict rendered or (2) would establish the illegality of custody following a judgment. HRPP Rules 40(a) and (f); *see Turner v. Hawai'i Paroling Auth.,* 93 Hawai'i 298, 310, 1 P.3d 768, 780 (App.2000).

## III.

The standard of review in determining whether a court erred in denying a petition for post-conviction relief without a hearing is *de novo. Dan v. State,* 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994). Under *de novo* review, "the appellate court steps into the trial court's position, reviews the same trial record, and redecides the issue[,]" determining whether the court's decision was right or wrong. *Id.* This court has held that *de novo* review is appropriate because a denial of a petition for post-conviction relief presents a question of law. *Id.* As this court has said,

> [a]s a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition *states a colorable claim.* To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the verdict, however, a petitioner's conclusions need not be regarded as true. Where examination of the record of the trial court proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing. *The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that [a p]etitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.*

*Id.* (quoting *State v. Allen,* 7 Haw.App. 89, 92–93, 744 P.2d 789, 792–93 (1987)) (some emphasis added and some in original).

## IV.

### A.

Appellant's first argument is two-fold. He argues that he was illegally punished for (1) violating HAR § 17–202–1(b), a rule that has been repealed, and (2) for assisting inmates in gaining meaningful access to the courts. HAR 17–202–1(b) stated that "[m]utual assistance between inmates or wards on legal matters is permitted on a case by case basis at the facility administrator's discretion. There is no absolute right of inmates to mutual assistance." The rule was re-

pealed on April 15, 2000. Appellant contends that the prison staff (1) applied the rule inasmuch as it confined him in the Special Holding facility and (2) created an illegal note of misconduct on his prison record which will adversely impact his future chances of parole. In response, the State argues that Appellant cannot demonstrate that the repealed rule was applied to him, and that even assuming some evidence that the facility was following the repealed rule, the rule "in and of itself is not unconstitutional or illegal because prisons have the authority to regulate mutual assistance" and "there is no requirement that prisons regulate by administrative rule."

## B.

The United States Supreme Court case, *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), is supportive of Appellant's first argument. The petitioner in *Johnson* was transferred to a maximum security building for violating a prison regulation that prohibited inmates from advising, assisting, or otherwise contracting to aid another inmate in legal matters.[8] *Id.* at 484, 89 S.Ct. 747. He sought relief from the disciplinary confinement by filing a "motion for law books and a typewriter" in federal district court. *Id.* The district court "treated this motion as a petition for a writ of habeas corpus and, after a hearing, ordered [the petitioner] released from disciplinary confinement and restored to the status of an ordinary prisoner." *Id.* The district court "held[, in part,] that the regulation was void because it in effect barred illiterate prisoners from access to federal habeas corpus." *Id.* The Sixth Circuit reversed, concluding "that the regulation did not unlawfully conflict with the federal right of habeas corpus." *Id.* at 485, 89 S.Ct. 747.

The Supreme Court began its opinion by reaffirming the importance of the writ of

habeas corpus, observing that "[s]ince the basic purpose of the writ is to enable those unlawfully incarcerated to obtain their freedom, *it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed.*" *Id.* (emphasis added). Based on this tenet, the Court stated that "[t]here can be no doubt that [a state] could not constitutionally adopt and enforce a rule forbidding illiterate or poorly educated prisoners to file habeas corpus petitions." *Id.* at 487, 89 S.Ct. 747. But, said the Court, the state regulation at issue "effectively [did] just that." *Id.*

Accordingly, it was determined that the record supported the district court's conclusion "that for all practical purposes, if such prisoners cannot have the assistance of a 'jailhouse lawyer,' their possibly valid constitutional claims will never be heard in any court." *Id.* (internal quotation marks and citation omitted). The Court observed that

the initial burden of presenting a claim to post-conviction relief usually rests upon the indigent prisoner himself with such help as he can obtain within the prison walls or the prison system. In the case of all except those who are able to help themselves—usually a few old hands or exceptionally gifted prisoners—*the prisoner is, in effect, denied access to the courts unless such help is available.*

*Id.* at 488, 89 S.Ct. 747 (emphasis added).

However, the Supreme Court also recognized that a state

may impose *reasonable restrictions and restraints* upon the acknowledged propensity of prisoners to abuse *both the giving and the seeking* of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities and the imposition of punishment for the giving or receipt of

---

**8.** The regulation at issue in *Johnson* provided as follows:

No inmate will advise, assist or otherwise contract to aid another, either with or without a fee, to prepare Writs or other legal matters. It is not intended that an innocent man be punished. When a man believes he is unlawfully held or illegally convicted, he should prepare a

brief or state his complaint in letter form and address it to his lawyer or a judge. A formal Writ is not necessary to receive a hearing. False charges or untrue complaints may be punished. Inmates are forbidden to set themselves up as practitioners for the purpose of promoting a business of writing Writs.
393 U.S. at 484, 89 S.Ct. 747.

consideration in connection with such activities. *But unless and until [a state] provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation such as that here in issue, barring inmates from furnishing such assistance to other prisoners.* *Id.* at 490, 89 S.Ct. 747 (emphases added) (citation omitted). Accordingly, the Sixth Circuit decision was reversed and the case remanded for further proceedings consistent with the opinion. *Id.*

## V.

### A.

■ Pursuant to *Johnson*, a prisoner may not be punished for violating a regulation or restriction that *unreasonably* obstructs the right of access to the courts.[9] Preliminarily, however, it should be noted that our obligation on this appeal is not to decide the ultimate question, resolved in *Johnson*, of whether Appellant was indeed illegally held in the Special Holding Unit based upon an unreasonable regulation. Rather, we need only determine whether Appellant made a showing of a colorable claim, thereby entitling him to an HRPP Rule 40(f) hearing.[10]

As stated previously, a Rule 40 hearing should be held if the petitioner states a colorable claim by "show[ing] that if taken as true the facts alleged [in the petition] would" entitle the petitioner to be released from custody. *Dan*, 76 Hawai'i at 427, 879 P.2d at 532. *See Turner*, 93 Hawai'i at 310–11, 1 P.3d at 780 (holding that a Rule 40 hearing was required where the appellant "establish[ed] a 'colorable claim' that the alleged prolonged physical custody resulting from denial of his parole request was illegal"); *Preiser v. Rod-*

---

**9.** The State contends that the Sixth Circuit in *Weaver v. Toombs*, 915 F.2d 1574, 1990 WL 153948 (6th Cir.1990), upheld a "prison regulation almost identical to HAR [§ ] 17-202-1(b)." *Weaver*, however, is an unpublished disposition. Furthermore, a sufficient description of the prison regulation in that case was not provided, thereby precluding a determination that it is "identical" to the regulation at issue here.

**10.** The dissent cites to a five-to-four decision of the United States Supreme Court in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (Ginsburg, J., dissenting, joined by Stevens, J.) (Breyer, J., dissenting, joined by Souter, J.). Concurring and dissenting opinion [hereinafter "Dissenting opinion"] at 423, 114 P.3d at 929. *Sandin*, however, concerned procedural due process rights and not the parameters of habeas relief. The defendant there brought a *civil rights action* against prison officials, claiming, *inter alia*, "a deprivation of procedural due process in connection with [a] disciplinary hearing[,]" 515 U.S. at 476, 115 S.Ct. 2293, wherein the prison adjustment committee refused his request to present witnesses, *id.* at 475, 115 S.Ct. 2293. At the conclusion of the hearing, the defendant was sentenced to "30 days' disciplinary segregation in the Special Holding Unit." *Id.* at 475–76, 115 S.Ct. 2293. A majority of five justices held that being disciplined "in segregated confinement did not present the type of atypical, significant deprivation in which a[s]tate might conceivably create a liberty interest[,]" *id.* at 486, 115 S.Ct. 2293, and, therefore, the defendant did not have "a protected liberty interest that would entitle him to ... *procedural protections*," *id.* at 487, 115 S.Ct. 2293 (emphasis added).

Here, Appellant does not claim a procedural due process violation. Rather, the question presented in this appeal is whether Appellant established a colorable claim that required the court to hold a hearing pursuant to HRPP Rule 40(f) before ruling on Appellant's petition. Moreover, this appeal does not raise the question of whether Appellant's "punishment was an ordinary incident of prison life." Dissenting opinion at 423, 114 P.3d at 929.

A fourteen-day disciplinary segregation punishment may, as the dissent contends, constitute "an ordinary incident of prison life." Dissenting opinion at 423, 114 P.3d at 929. But Appellant's petition raises a more specific basis for habeas relief. He contends that he was punished by being confined in the Special Holding Unit for assisting fellow inmates *in violation of not just any prison rule, but an allegedly illegal one— either repealed or unconstitutional.* This legal and constitutional aspect of Appellant's claim implicates the instruction of *Johnson*, a habeas corpus case, as opposed to *Sandin*, a civil rights case.

For, if Appellant's allegations are true, the "discipline" imposed upon him would not be "an ordinary incident of prison life" due to its illegal and/or unconstitutional basis. In that connection, *Johnson* reversed the Sixth Circuit's reversal of a district court decision and ordered that the defendant be "released from disciplinary confinement and restored to the status of an ordinary prisoner." 393 U.S. at 484, 89 S.Ct. 747. This is the precise relief from custody Appellant seeks here. Thus, with all due respect, the dissent is incorrect in concluding that "[h]abeas relief does not lie for this discipline." Dissenting opinion at 423, 114 P.3d at 929.

*riguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that *the traditional function of the writ is to secure release from illegal custody*." (Emphasis added.)) In his Rule 40 petition, Appellant alleged, in relevant part, that the prison was still enforcing the repealed HAR § 17–202–1(b) and that he was confined to the Special Holding Unit for assisting other inmates with legal matters where he had obtained warden permission to do so. Taking these facts "as true," *Dan*, 76 Hawai'i at 427, 879 P.2d at 532, Appellant would be entitled to the habeas corpus relief granted by the district court in *Johnson* and released from the Special Holding Unit.

### B.

However, as previously mentioned, pursuant to HRPP Rule 40(f), "the court may deny a hearing if the petitioner's claim is patently frivolous and *is without trace of support either in the record or from other evidence submitted by the petitioner*." (Emphasis added.) Moreover, "[w]here examination of the record of the trial court proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing." *Dan*, 76 Hawai'i at 427, 879 P.2d at 532. Thus, we must also consider the record before overturning the

court's denial of the petition without a hearing.[11]

In support of his petition, Appellant provided numerous exhibits, including two "NOTICE[S] OF REPORT OF MISCONDUCT AND HEARING" and ten "INMATE COMPLAINT/GRIEVANCE" forms. According to the May 9, 2001 notice, Appellant was found "Guilty" of "Refusing to obey an order of any staff member[,]" by "*assist[ing] several inmates with legal matters without proper authorization*." (Emphasis added.) This same notice also provided that Appellant was issued a "SANCTION" of "14 days lockdown to be served in Special Holding pending the availability of space." According to the June 27, 2002 notice, Appellant was found "Guilty to all charges" for, *inter alia*, "failing to follow facility directives *regarding mutual assistance* [.]" (Emphasis added.)

Appellant was again issued the "SANCTION" of "14 days lockdown to be served in special holding pending space availability." As for the ten grievance forms submitted, all of them indicated, under the heading "RESOLUTION," that the prison had a policy of requiring inmates to obtain warden approval before assisting another inmate with legal matters.[12] One of the ten grievance forms further indicated that the prison may have continued to operate under the repealed HAR Title 17.[13]

---

11.  We acknowledge the State's concern over additional documents attached to Appellant's opening brief and observe that our decision rests only upon consideration of the official record on appeal without reference to Appellant's new attachments.

12.  Several of Appellant's grievances were denied as follows: (1) the resolution for the April 4, 2002 grievance stated, "Inmate assistance must be approved[,]" (2) the resolution for the May 31, 2001 grievance stated, "Assistance to help other inmates for legal matters will be decided on a case-by-case basis[,]" (3) the resolution for the July 1, 2001 grievance stated, "You were sanctioned for a failure to follow rules as you were instructed on numerous occasions on how to seek authorization for mutual assistance[,]" ·(4) the resolution for the January 30, 2001 grievance stated, "Library staff were following procedures when it was determined that you had unauthorized legal materials in your possession. During that period of time you were not approved to provide mutual assistance, therefore library staff

acted in accordance with current program rules[,]" and (5) the resolution for the November 24, 2000 grievance stated,

> A request for mutual assistance must be specific. In order to be considered for authorization to receive assistance from another inmate, simply send a request to the Deputy Warden's Office and indicate the name of the inmate you wish to assist you. Please send your written request through regular channels. Be advised that mutual assistance is not a right and will be reviewed on a case by case basis.

13.  We do not agree with the State's assertion that the "grievances Appellant filed are illegible, so it cannot be determined if they concern the repealed prison regulation." In his August 18, 2001 grievance, Appellant legibly challenged HAR Title 17 as "no longer in effect since April 2000" and replaced by a new title, Title 23. It was decided, however, that the "Administration has not received a finalized version of Title 23 and has been told it is still in draft. The rules

In his February 2, 2001 grievance, Appellant stated that he submitted several inmate request forms to his counselor, David Voyles, to give to the warden for approval to help several inmates and that those requests were ignored. The "RESOLUTION" in this grievance stated that the warden never received the requests. The Ninth Circuit has determined that a state did not satisfy its burden of demonstrating meaningful access where the record indicated that requests for library access were "lost or ignored" or arbitrarily denied. *Gluth v. Kangas*, 951 F.2d 1504, 1508 (9th Cir.1991) ("It is the state's burden to provide meaningful access and to demonstrate that its chosen method is adequate.").

Appellant also submitted a "FOUND PROPERTY REPORT," documenting that envelopes addressed to other inmates, including one Aua Pedro, were confiscated from Appellant's cell during a "random shakedown" on April 5, 2002. According to a "HCF [ (Halawa Correctional Facility) ] INMATE REQUEST FORM," Aua Pedro's request that Appellant be allowed to help him with legal matters was approved by prison staff on June 22, 2001. In the exhibit entitled "RESULTS FOR ADJUSTMENT COMMITTEE HEARING FOR INMATE EUGENE HUTCH[,]" the committee sanctioned Appellant to fourteen days' segregation in the Special Holding Unit for being in possession of and making copies of legal documents for other inmates as follows:

> The committee wants to make it very clear to the subject that he is *not being charged with assisting inmates with legal matters. He is charged with being in possession of*

*their legal documents and making duplicate copies for them.* It is *not* the subject's responsibility to make these copies and retain the actual legal documents of other inmates for the purpose of mailing these documents to the courts. It is the responsibility of inmate Genaro Gualdarama. The Subject should only be *assisting* in legal issues by discussion and correspondence with the inmate.

(Some emphases added and some in original.) From what we can glean, HAR § 17–202–1(b) aside, this is the most specific description of the mutual assistance policy being enforced against Appellant.

The State has not provided the rules or policy by which the prison decides whether to authorize mutual assistance between inmates, but continues to assert that in sanctioning Appellant, the prison did not implement the repealed HAR § 17–202–1(b).[14] However, the reason given in the aforementioned adjustment committee report for sending Appellant to the Special Holding Unit is cause for concern. The scope of the prison's statement that Appellant "should only be *assisting* in legal issues *by discussion and correspondence* with the inmate" is questionable. (Some emphasis added and some in original.) Prohibiting the "jailhouse lawyer" from "possessing" the legal documents of the inmate he has been authorized to "assist," means that the inmate must be able to read and convey what is written in the papers to the "jailhouse lawyer" in order to obtain assistance. If the statement in the adjustment committee report is accurate, such a policy, standing alone, may "effectively" "forbid[ ]" illiterate or poorly educated prisoners to file

from Title 17 were incorporated into departmental policy. They are in effect both on your module guidelines and were posted in the quads."

We also cannot accept the State's contention that "[b]ecause he attached copies of the grievances before the prison administration submitted its response to them, Appellant's accusations therein have not been confirmed and cannot be taken as fact." The grievances in the record show typewritten and signed responses by various prison officials, including the warden, under the heading "RESOLUTION."

**14.** The State maintains that the prison need not operate by administrative rules and that "[e]ven if section 17–202–1(b) was mistakenly cited as

the basis of Appellant's misconduct, a clerical mistake does not take away the prison's authority to regulate mutual assistance, especially in the absence of any punishment." However, the record does not foreclose the possibility that the reason for punishing Appellant may have been unconstitutional. *See Dan*, 76 Hawai'i at 427, 879 P.2d at 532 (stating that "denial of a post-conviction motion based on ineffective assistance of counsel without conducting an evidentiary hearing is reviewed *de novo* for a determination of whether the files and records of the case conclusively show that petitioner is entitled to *no* relief" (citing *United States v. Burrows*, 872 F.2d 915 (9th Cir.1989))).

habeas corpus petitions[,]" running afoul of *Johnson.* 393 U.S. at 487, 89 S.Ct. 747. The foregoing exhibits, then, constitute more than a "trace of support" that Appellant was illegally and/or unconstitutionally confined to the Special Holding Unit.[15]

Therefore, we hold, based upon Appellant's Rule 40 petition and an independent examination of the record, that Appellant has made a showing of a colorable claim that he was illegally punished for providing assistance to other inmates and, accordingly, the court should have held a hearing on the petition as to this claim.[16]

## VI.

■ Appellant's final two arguments are that he has been denied access to the courts and that prison staff have retaliated against him for attempting to exercise his rights. Appellant's claims rest on the contentions that prison staff prevented him from receiving the Federal Prison Guidebook and intentionally denied him access to his medically required shoes. In response, the State maintains that Appellant has failed to demonstrate that the absence of the book injured his ability to access the courts, citing numerous legal claims filed by Appellant. Furthermore, the State contends that Appellant did not demonstrate that he had followed proper procedures for delivery approval and, therefore, failed to show that the refusal to accept delivery was retaliatory.

In the instant case, Appellant does not establish a Rule 40(a)(1) claim challenging the judgment for which Appellant is currently incarcerated. The lack of access to the Federal Prison Guidebook and his shoes does not demonstrate that the judgment against him was unconstitutional, lacking in jurisdictional foundation, illegal, made in the absence of key evidence, or that there is a new basis for a collateral attack. HRPP Rule 40(a)(1). In addition, Appellant's allegations fail to demonstrate any claims under Rule 40(a)(2)

---

**15.** The dissent differs in its *application* of the "adequacy of alternatives" standard of *Johnson,* determining that "[i]nasmuch as [Appellant] and the other inmates have access to the law library, and are permitted to 'assist' each other in legal matters through discussion and correspondence, *Johnson* instructs that these alternative avenues of access to the courts validate the regulation." Dissenting opinion at 422, 114 P.3d at 928. This reasoning, however, overlooks the individuals sought to be protected in *Johnson.*

First, we emphasize that our decision today does not reach the merits of Appellant's Rule 40 petition, but simply requires the court to hold a hearing before rendering a decision on the petition for post-conviction relief. It bears repeating that the State did not explain its policy governing mutual assistance between inmates. In *Johnson,* the Supreme Court observed that Tennessee had not provided its inmates with alternatives to prepare petitions available in other states, such as consultation on preparing petitions by trained public defenders, interviews and advisement by senior law students, and consultation from local bar members who volunteer to visit the prisons. 393 U.S. at 489, 89 S.Ct. 747. Contrary to the dissent's contention, *see* dissenting opinion at 422 n. 3, 114 P.3d at 928 n. 3, the record does not suggest that Hawai'i provides similar alternatives. Hence, the "alternatives" cited by the dissent are speculative. Without knowing precisely what the "alternatives" were, it was impossible for the court to rule on the "adequacy" of such hypothetical "alternatives."

Again, the most explicit description of the State's mutual assistance policy was provided by Appellant, as discussed *supra.* Standing alone, the statements in the aforementioned "RESULTS FOR ADJUSTMENT COMMITTEE HEARING" pose the threat that illiterate and poorly educated prisoners are denied access to habeas relief. A remand for hearing enables the State to clarify those suspect statements, explain its policy in greater detail, and demonstrate that meaningful alternatives exist for the illiterate or poorly educated prisoner.

Second, assuming, as the dissent contends, that the shrouded prison policy provides inmates access to the law library and assistance from the jailhouse lawyer via "discussion and correspondence," such so-called "alternatives" are *not* "meaningful" for the illiterate or poorly educated prisoner who may not able to read materials in the law library nor communicate what is stated in his or her legal documents in order to facilitate any "discussion" or "correspondence" with the jailhouse lawyer. The dissent's reliance on these alternatives does not account for the very individuals the Supreme Court sought to protect in *Johnson,* and, thus, with all due respect, must be rejected.

**16.** In light of the fact that this matter is remanded for a hearing, we do not reach the question of an appropriate remedy. Accordingly, it is unnecessary to discuss Appellant's request for expungement of "all alleged [p]rison misconducts for helping inmates try and gain adequate, effective, and meaningful access to the courts" or effect on parole.

such as an assertion that the sentence was fully served, parole or probation was unlawfully revoked, or any other ground making the custody illegal.

However, Appellant may be entitled to relief on these claims through a civil claim and not a petition under Rule 40. HRPP Rule 40(c)(3) (2002) states, in relevant part, that

> if a post-conviction petition alleges neither illegality of judgment nor illegality of post-conviction "custody" or "restraint" but instead alleges a cause of action based on a civil rights statute or other separate cause of action, *the court shall treat the pleading as a civil complaint not governed by this rule.*

(Emphasis added.) Since Appellant's claims do not meet the grounds outlined in Rules 40(a)(1) or 40(a)(2), and these claims seemingly fit under the "[s]eparate [c]ause of action" under Rule 40(c)(3), the court should "treat the pleading as a civil complaint" as to these matters. In the absence of a colorable claim, the court did not err by not convening a hearing as to these issues. *See Dan*, 76 Hawai'i at 427, 879 P.2d at 532. However, these claims should be "transferred by the court for disposition under civil rules." HRPP Rule 40(c)(3).[17]

## VII.

In summary, Appellant has made a showing of a colorable claim that he was illegally or unconstitutionally confined in the Special Holding Unit and, therefore, he should have been granted an HRPP Rule 40(f) hearing as to that claim. Appellant's remaining claims relating to denial of access to the courts and retaliatory behavior do not fall within the domain of HRPP Rule 40 and should have been appropriately classified and disposed of as civil claims. Therefore, the March 13, 2003 order denying Appellant's petition with-

out a hearing is vacated and the case remanded to the court for further proceedings consistent with this opinion.

Concurring and Dissenting Opinion by NAKAYAMA, J.

I concur in the majority's opinion except as to that part of the opinion holding that Hutch made a showing of a colorable claim that he was illegally or unconstitutionally confined in the Special Holding Unit for assisting other inmates with legal matters, thereby entitling him to a hearing under Hawai'i Rules of Penal Procedure (HRPP) Rule 40(f) (2002).[1] Majority Opinion (Majority) at 419, 114 P.3d at 925. Inasmuch as Hutch's HRPP Rule 40 petition fails to establish a "colorable claim" sufficient for habeas relief, and his fourteen-day disciplinary segregation punishment for possessing other inmates' legal documents and making duplicate copies for them was an ordinary incident of prison life and fell within the range of confinement to be normally expected for such prison infraction, I do not believe the circuit court was wrong to deny Hutch's HRPP Rule 40 petition without a hearing. Therefore, in this regard, I must respectfully dissent.

This court reviews a trial court's denial of a HRPP Rule 40 petition without a hearing *de novo*. *Dan v. State*, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994). Under *de novo* review, this court must discern whether the trial court's records demonstrate that a petitioner's application for post-conviction relief made such a showing of a "colorable claim" to warrant a hearing before the lower court. *See Stanley v. State*, 76 Hawai'i 446, 448, 879 P.2d 551, 553 (1994); *see also Dan*, 76 Hawai'i at 427, 879 P.2d at 532. "To establish a colorable claim, the allega-

---

**17.** In light of our disposition, we need not address the State's argument that Appellant did not have standing to claim a denial of his right of access to the courts due to lack of injury.

**1.** HRPP Rule 40(f) provides, in relevant part:
> If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the

petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner. The court may also deny a hearing on a specific question of fact when a full and fair evidentiary hearing upon that question was held during the course of the proceedings which led to the judgment or custody which is the subject of the petition or at any later proceeding.

tions of the petition must show that if taken as true the facts alleged would change the verdict[.]" *Dan,* 76 Hawai'i at 427, 879 P.2d at 532 (citation omitted). Accordingly, in reviewing Hutch's present HRPP Rule 40 petition, we must ascertain whether Hutch established a "colorable claim" that his fourteen-day disciplinary segregation punishment allegedly resulting from a violation of Hawai'i Administrative Rules (HAR) § 17–202–1(b), a repealed prison rule, was illegal.

Initially, I note that, contrary to Hutch's allegation in his HRPP Rule 40 petition, his fourteen-day disciplinary segregation punishment resulted solely from his refusal to obey the orders of prison staff members with respect to his unauthorized possession of the legal documents of fellow inmates—a prison infraction subject to discipline.

Nevertheless, presuming that Hutch was punished under the repealed HAR § 17–202–1(b) for assisting inmates with legal matters, we must determine whether Hutch's punishment was unconstitutional. I do not believe it was.

The majority relies on *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), to conclude that Hutch "made a showing of a colorable claim that he was illegally punished for providing assistance to other inmates." Majority at 415–416, 418–419, 114 P.3d at 921–922, 924–925. In *Johnson,* the petitioner, a "jailhouse lawyer" or "writ writer" who helped inmates prepare legal documents, was transferred to a maximum security building for violating a prison regulation that prohibited prisoners from advising, assisting, or contracting to aid other inmates in legal matters. *Id.* at 484, 89 S.Ct. at 748. Recognizing the fundamental importance of a writ of habeas corpus and acknowledging the high percentage of illiterate and poorly educated prisoners incarcerated in jails and penitentiaries, the United States Supreme Court held that, *"unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief,* it may not validly enforce a regulation such as that here in issue, barring inmates from furnishing such assistance to other prisoners." *Id.* at 490, 89 S.Ct. at 751 (emphasis added). The crux of *Johnson* turned on the *adequacy of the alternatives* available to inmates in the preparation of petitions for post-conviction relief, namely, legal assistance and access to legal materials and/or a law library.[2] *See, e.g., Sizemore v. Lee,* 20 F.Supp.2d 956, 958 (W.D.Va.1998) ("[The Marion Correctional Treatment Center] has satisfied the primary

---

**2.** The United States Supreme Court admonished the lack of meaningful alternatives available to prisoners incarcerated in the Tennessee State Penitentiary:

Tennessee does not provide an available alternative to the assistance provided by other inmates. The warden of the prison in which petitioner was confined stated that the prison provided free notarization of prisoners' petitions. That obviously meets only a formal requirement. He also indicated that he sometimes allowed prisoners to examine the listing of attorneys in the Nashville telephone directory so they could select one to write to in an effort to interest him in taking the case, and that on several occasions he had contacted the public defender at the request of an inmate. There is no contention, however, that there is any regular system of assistance by public defenders. In its brief the State contends that there is absolutely no reason to believe that prison officials would fail to notify the court should an inmate advise them of a complete inability, either mental or physical, to prepare a habeas application on his own behalf, but there is no contention that they have in fact ever done so.

This is obviously far short of the showing required to demonstrate that, in depriving prisoners of the assistance of fellow inmates[,] Tennessee has not, in substance, deprived those unable themselves, with reasonable adequacy, to prepare their petitions, of access to the constitutionally and statutorily protected availability of the writ of habeas corpus. By contrast, in several States, the public defender system supplies trained attorneys, paid from public funds, who are available to consult with prisoners regarding their habeas corpus petitions. At least one State employs senior law students to interview and advise inmates in state prisons. Another State has a voluntary program whereby members of the local bar association make periodic visits to the prison to consult with prisoners concerning their cases. We express no judgment concerning these plans, but their existence indicates that techniques are available to provide alternatives if the State elects to prohibit mutual assistance among inmates.

*Johnson,* 393 U.S. at 490, 89 S.Ct. at 751 (internal quotation marks and footnotes omitted).

concerns of *Johnson* by providing inmates with a law library and inmate legal assistants."). The majority, however, fails to appreciate as much.

The majority essentially conjures a piecemeal construction of *Johnson* to conclude that Hutch "made a showing of a colorable claim that he was illegally punished for providing assistance to other inmates[.]" Majority at 419, 114 P.3d at 925. The majority posits that Hutch was entitled to habeas relief under *Johnson*, based on the allegation made in his HRPP Rule 40 petition that "the prison was still enforcing the repealed HAR § 17–202–1(b) and that he was confined to the Special Holding Unit for assisting other inmates with legal matters where he had obtained warden permission to do so." Majority at 417, 114 P.3d at 923. In holding as much, the majority employs the following reading of *Johnson*:

> [p]rohibiting the "jailhouse lawyer" from "possessing" the legal documents of the inmate he has been authorized to "assist," means that the inmate must be able to read and convey what is written in the papers to the "jailhouse lawyer" in order to obtain assistance. If the statement in the adjustment committee report is accurate, such a policy, standing alone, may "effectively" "forbid[ ] illiterate or poorly educated prisoners to file habeas corpus petitions[,]" running afoul of *Johnson*.

Majority at 418, 114 P.3d at 924 (some brackets in the original) (citation omitted). The

majority's application of *Johnson* is unavailing. First, unlike *Johnson*, there is no blanket prohibition against "mutual assistance" at the Halawa Correctional Facility. Second, Hutch has not established that he was "actually" injured by the prohibition against the unauthorized possession of the legal materials of his fellow inmates. Thus, the majority's attempt to reconcile *Johnson's* mandate to support its conclusion that Hutch made a showing of a colorable claim sufficient for habeas relief is ill-advised.

In distinct contrast to the majority's interpretation of *Johnson*, *Johnson* teaches that prison officials can regulate the scope and frequency of assistance that "jailhouse lawyers" provide to other inmates, so long as *meaningful alternatives* are available. Inasmuch as Hutch and the other inmates have access to the law library, and are permitted to "assist" each other in legal matters through discussion and correspondence, *Johnson* instructs that these alternative avenues of access to the courts validate the regulation Hutch claims formed the basis of his illegal and unconstitutional punishment.[3]

Accordingly, assuming that Hutch was punished under the repealed HAR § 17–202–1(b), as alleged in his HRPP Rule 40 petition, it cannot be said that Hutch's fourteen-day disciplinary segregation punishment was "illegal" under *Johnson*. As such, Hutch's HRPP Rule 40 petition alleging that he was "illegally punished" fails to establish a "colorable claim" sufficient for habeas relief.[4] Therefore, the circuit court did not err in

**3.** The majority insists that "access to the law library and assistance from the jailhouse lawyer via 'discussion and correspondence,' ... are not 'meaningful' for the illiterate or poorly educated prisoner who may not [be] able to read materials in the law library nor communicate what is stated in his or her legal documents in order to facilitate any 'discussion' or 'correspondence' with the jailhouse lawyer." Majority at 419 n. 15, 114 P.3d at 925 n. 15 (emphasis omitted). First, I emphasize that Hutch, as well as the other inmates, are *not prohibited* from "assisting" fellow inmates with legal matters. Second, I am mindful of the access illiterate and poorly educated prisoners have to habeas relief. Consistent with *Johnson's* mandate, it is imperative that prisons provide reasonable and meaningful alternatives to assist inmates in preparing petitions for post-conviction relief. Based on the

records in the instant case, the Halawa Correctional Facility has done just that. To reiterate, there is no blanket prohibition against "mutual assistance" at the Halawa Correctional Facility. Moreover, Hutch neither established nor alleged that he suffered actual injury from the available alternatives—namely, using the law library and "discussing" and "corresponding" with fellow inmates regarding legal matters. Indeed, it is incumbent upon Hutch to demonstrate the shortcomings of these alternatives, as applied to him. Habeas relief merits as much.

**4.** I note, however, that because Hutch's claim of "illegal punishment" appears to be the proper subject of the conditions of his confinement or the effects of actions by prison officials on his life as an inmate, it should be processed as a civil complaint. *See* HRPP Rule 40(c)(3).

denying Hutch's HRPP Rule 40 petition without a hearing.

Finally, I highlight that the sole basis for Hutch's fourteen-day disciplinary segregation punishment resulted from his unauthorized possession of the legal materials of fellow inmates—a prison infraction subject to disciplinary action:

> The committee wants to make it very clear to [Hutch] that he is not being charged with assisting inmates with legal matters. He is charged with being in possession of their legal documents and making duplicate copies for them. It is not [Hutch's] responsibility to make these copies and retain the actual legal documents of other inmates for the purpose of mailing these documents to the courts. It is the responsibility of inmate Genaro Gualdarama. [Hutch] should only be *assisting* in legal issues by discussion and correspondence with the inmate.

(Emphasis in the original.) Despite Hutch's contention to the contrary, the record supports that Hutch's punishment was an ordinary incident of prison life and fell within the range of confinement to be normally expected for such prison infractions.[5] *See Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418 (1995) ("Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."). Habeas relief does not lie for this discipline. Accordingly, the circuit court did not err in ruling that Hutch's HRPP Rule 40 petition "[was] without merit, [was] patently frivolous, and [was] without support in either the record or evidence submitted by [Hutch]."

---

5. Hutch submitted numerous grievance forms referencing the prison's "mutual assistance" policy, which he claims served the basis of his illegal punishment. However, Hutch's actual discipline (fourteen-day disciplinary segregation punishment), as documented, resulted from his refusal to obey the orders of prison staff members with respect to his unauthorized possession of the legal documents of fellow inmates, in violation of HAR §§ 17–201–8(10), (11), and (32).