BEATY CONSTRUCTION, INC.,
Appellant–Respondent,

v.

BOARD OF SAFETY REVIEW, Indiana Occupational Safety and Health Administration, Indiana Department of Labor, Appellees–Plaintiffs.

No. 49A05–0811–CV–664.

Court of Appeals of Indiana.

July 7, 2009.

Publication Ordered Sept. 1, 2009.

Transfer Denied Oct. 29, 2009.

Peter G. Tamulonis, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

MATHIAS, Judge.

The Marion Superior Court denied a petition filed by Beaty Construction Inc.

("Beaty") in which Beaty sought judicial review of the final order of the Indiana Board of Safety Review ("the Board") approving the order of the administrative law judge ("ALJ") who found that Beaty had committed violations of the Indiana Occupational Safety and Health Administration Act ("IOSHA"). Beaty appeals and presents two issues, which we restate as whether the trial court erred in affirming the Board's final order which found: (1) that Beaty violated the General Duty Clause of the IOSHA statutes, and (2) that Beaty committed a non-serious violation by failing to properly maintain its inspection reports.

We affirm.

**Facts and Procedural History[1]**

Beaty is a construction contractor that specializes in earth retention and auger cast piling. At the time relevant to this appeal, Beaty was working on a project at Clark County Memorial Hospital in Jeffersonville, Indiana. Although Beaty's project manager was Robert Hough ("Hough"), Melvin Holton ("Holton") was Beaty's day-to-day supervisor at the construction site. A thirty-five foot light pole located in the hospital parking lot was obstructing Beaty's ability to complete the job. After consulting with Hough, Holton asked another contractor working at the site, Wehr Constructors, Inc. ("Wehr") to disconnect the power from the pole so that it could be removed. Holton repeatedly asked Wehr to remove the pole. When Wehr did not respond to his requests,

1. We note that the statement of facts in Beaty's brief is not in narrative form, is rife with argument, and therefore does not comply with Indiana Appellate Rule 46(A)(6)(c). Instead, Beaty's statement of facts lists the ALJ's findings and explains why, in Beaty's opinion, these findings are or are not supported by the record. Thus, the facts are also not stated in accordance with the standard of review appropriate to the judgment or order being appealed. *See* App. R. 46(A)(6)(b). In its reply brief, Beaty argues that it was simply explaining what it considers deficiencies with the ALJ's findings. However, this is an argument that is not appropriately included in a statement of facts.

Holton decided that he and other Beaty employees would remove the pole, despite having no experience in moving such items.

On July 26, 2004, Holton placed a nylon sling around the light pole and attached the sling to a crane. ·Jack Bissey ("Bissey"), who was then an employee for Beaty, stated that he did not like the way the rigging looked and that he thought the tapered light pole left little for the sling to grab. Another Beaty employee, Jerry Lewis ("Lewis"), loosened bolts from the base of the light pole. Lewis waited until Holton put tension on the line before he loosened the final bolt so the pole would not stand unsupported. Holton told the members of his crew who were not working on the light pole to stay away. When Holton put tension on the line connected to the sling attached to the light pole, the sling slid up the tapered pole and pulled the luminaire, or lighting unit, off the top of the pole. The luminaire then fell to the ground and struck Lewis. Lewis was critically injured and died on September 8, 2004.

Cinergy Energy later removed the light pole using a method somewhat similar to that used by Holton. However, workers from Cinergy used a nylon rope, whereas Holton had used a strap or sling. Further, Cinergy added stabilizers to the pole and tongues that prevented the rope from sliding up the pole, as had happened when Holton attempted to move the pole.

Because there had been a worksite fatality, the Indiana Department of Labor ("IDOL") inspected the hospital worksite between September 10 and November 1, 2004. On December 1, 2004, IDOL issued a safety order and notifications of penalty to Beaty as a result of the light pole incident. The first violation related to the manner in which Beaty had attempted to · move the pole:

> An acceptable means of abatement to correct this hazard would be to follow standard industry practice for the removal of these type of tapered metal light poles by lifting the pole using a j-hook or other rigging assembly tied into the hand hole at the base of the pole, with a sling or other device affixed on the top of the pole to steady the pole when removing.

Appellant's App. p. 177. The report further stated:

> The monthly/daily inspection reports/record for the ... crane ... were not signed by the persons doing the inspection as there were times the operator doing the inspection failed to sign the reports[,] and other times the Supt. performed the inspection by signed [sic] the operators [sic] name.

Appellant's App. p. 178.

On December 13, 2004, Beaty filed a petition with IDOL seeking review of these orders. An administrative hearing was eventually held before an ALJ on March 6, 2007. On August 10, 2007, the ALJ issued his recommended findings of fact and conclusions of law, affirming IDOL's safety orders. On September 19, 2007, the Board issued a final order approving and adopting the ALJ's findings and conclusions. Beaty then sought judicial review by filing a petition in Marion Superior Court on October 18, 2007. On September 25, 2008, the trial court entered findings and conclusions affirming the Board's decision. Beaty now appeals.

### Discussion and Decision

As explained by our supreme court in *LTV Steel Co. v. Griffin:*

> The Indiana Occupational Safety and Health Act ("IOSHA") requires Hoosier employers to "establish and maintain conditions of work which are reasonably safe and healthful for employees, and

free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees." Ind.Code § 22–8–1.1–2. Under IOSHA, an Occupational Safety Standards Commission is authorized to promulgate safety and health standards. *Id.* § 22–8–1.1–7. In addition, IOSHA adopts certain federal occupational safety and health standards as standards of the Indiana Occupational Safety Standards Commission. *Id.* § 22–8–1.1–13.1.[2] Every Indiana employer is required to "comply with the occupational health and safety standards promulgated under" IOSHA. *Id.* § 22–8–1.1–3.1.

The Commissioner of the Indiana Department of Labor and the Commissioner's designated representatives are charged with administering and enforcing IOSHA and the safety standards adopted by the Standards Commission. *Id.* § 22–8–1.1–22.1. The Commissioner and designated representatives are [with certain exceptions] authorized by IOSHA to "enter without delay and inspect at all reasonable times places of employment in order to enforce any provisions of [IOSHA], including occupational safety and health standards." *Id.* § 22–8–1.1–23.1.

730 N.E.2d 1251, 1253 (Ind.2000) (footnotes omitted).

■ Our General Assembly has granted courts the power to review the action of state government agencies taken pursuant to the Administrative Orders and Procedures Act, but this power of judicial review is quite limited. *Griffin,* 730 N.E.2d at 1257. Specifically, a court may only set aside agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. *Id.* (citing Ind.Code § 4–21.5–5–14(d)).

■ Although we grant deference to the administrative agency's findings of fact, no such deference is accorded to the agency's conclusions of law. *Id.* An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself. *Id.* When a court determines that an administrative agency's interpretation is reasonable, it should terminate its analysis and not address the reasonableness of the other party's interpretation. *Shaffer v. State,* 795 N.E.2d 1072, 1076 (Ind.Ct.App.2003) (citing *Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n,* 695 N.E.2d 99, 105 (Ind.1998)). "Terminating the analysis recognizes 'the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations.'" *Id.* (quoting *Ind. Wholesale Wine,* 695 N.E.2d at 105). The burden of demonstrating that an agency's action is invalid rests with the party asserting the invalidity. *Ind. State Bd. of Educ. v. Brownsburg Cmty. Sch. Corp.,* 865 N.E.2d 660, 665 (Ind.Ct.App. 2007) (citing Ind.Code § 4–21.5–5–14(a) (2002)).

## I. General Duty Violation

■ Beaty first claims that the trial court erred in affirming the Board's con-

---

**2.** As noted by the *Griffin* court, Indiana Code section 22–8–1.1–13.1 was repealed in 1994, and the current provision may be found in Indiana Code section 22–8–1.1–16.2 (2005). *See* 730 N.E.2d at 1253 n. 2.

clusion that Beaty violated the "General Duty Clause" of the IOSHA statutes. Indiana Code section 22–8–1.1–2 (2005), referred to by the parties as the "General Duty Clause," provides: "Each employer shall establish and maintain conditions of work which are reasonably safe and healthful for employees, and free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees." The parties both agree that, to establish a violation of this section, IDOL must prove: (1) the existence of a hazard likely to cause serious physical harm or death; (2) the employer's recognition of such hazard; (3) the availability of feasible means to abate the hazard; and (4) the employer's failure to implement a feasible means of abatement. *Caterpillar v. Occupational Safety and Health Rev. Comm'n*, 122 F.3d 437, 440 (7th Cir.1997).[3]

■ Beaty first claims that the undisputed evidence establishes that IDOL did not prove the existence of any hazard and instead relied simply on the fact that an accident occurred. The Board counters that Lewis's death simply demonstrates the presence of the hazard created by the attempted removal of the light pole and is not the only evidence of the existence of the hazard. Given our deferential standard of review, we must agree. Holton had repeatedly requested that Wehr remove the pole because Beaty had no experience in removing such objects. Bissey testified that he did not like the way the Holton's rigging looked. Further, Holton himself directed that Beaty employees who were not involved in the attempted removal to stay away from the pole as they attempted to lift it. From this, the Board

could conclude that Beaty's attempt to remove the light pole created a hazard likely to cause serious physical harm or death.

■ Beaty also claims that there was no evidence that it should have recognized the existence of any hazard. Essentially, Beaty claims that Holton's attempt to move the light pole was beyond the scope of his authority and that Holton's actions were an isolated, idiosyncratic incident that Beaty could not have foreseen.

Beaty essentially requests that we look at the evidence contrary to the Board's decision, reweigh the evidence, and come to a contrary conclusion. Our standard of review precludes us from doing so. The evidence favorable to the Board's decision reveals that Holton was the Beaty employee in charge of day-to-day supervision at the site. The Board therefore concluded that Holton actions were attributable to Beaty, and we will not second-guess the Board's decision. Moreover, there was evidence that Beaty did in fact recognize the hazard. Bissey testified that he did not like the way the rigging looked and that he thought the tapered light pole left little for the slight to grab, and Holton told the members of his crew who were not working on the light pole to stay away during the attempted removal.

■ The Board also established the availability of feasible means to abate the hazard. Beaty claims that there was no standard industry practice with regard to the removal of light poles and that the method used by Holton was essentially the same as that eventually used by Cinergy. However, Cinergy used a nylon rope instead of the sling used by Holton. Furthermore, Cinergy used measures to pre-

3. The parties also agree that, because IOSHA and the federal Occupational Safety and Health Administration Act are similar, we may employ the rationales used by federal

courts in interpreting IOSHA. *See Comm'n of Labor v. Gary Steel Products Corp.*, 643 N.E.2d 407, 412 (Ind.Ct.App.1994).

vent the rope from sliding up the pole as happened when Beaty attempted to remove the pole. Thus, the methods were not essentially the same because Cinergy took steps to ensure that the rope would not slide up the pole and pull off the luminaire. Moreover, there was also evidence that using a j-hook was a feasible means of removing the pole without causing the luminaire to pull off the pole. Similarly, the Board established that Beaty failed to implement these feasible means of abatement. Holton, unlike Cinergy, did not use means to prevent the rope from sliding up the pole and pulling off the luminaire.

Thus, IDOL established each of the four elements required to show a violation of the General Duty Clause. Beaty's arguments to the contrary are simply an invitation for us to ignore our deferential standard of review, which we will not do.

## II. Non–Serious Violation

■■■ A non-serious IOSHA violation is a violation "which do[es] not fall within the statutory definition of a serious [violation], but which nonetheless ha[s] a direct or immediate relationship to occupational safety or health." *Pelton Casteel, Inc. v. Marshall*, 588 F.2d 1182, 1187 (7th Cir. 1978). Similarly, Indiana Code section 22–8–1.1–25.1(d) defines a *"de minimis* violation" as one "having no direct or immediate relationship to safety or health." Beaty claims that the Board erred when it concluded that IDOL had established that Beaty committed a "non-serious" violation of 29 C.F.R. 1926.550(b)(2), which requires employers to "prepare a certification record which includes the date the crane items were inspected; *the signature of the person who inspected the crane items;* and a serial number, or other identifier, for the crane inspected." (emphasis added).

Here, Beaty's crane inspection records were sometimes signed by the person who did not perform the inspection. This is clearly contrary to the requirements of the applicable regulation. Beaty claims that although the inspection reports may not have been signed by someone other than the inspector on a daily or weekly basis, they were signed by the actual inspector at least monthly, which it claims is all that is required under 29 C.F.R. 1926.550(b)(2). However, Beaty admits that the inspection reports were at times signed by someone other than the actual inspector. Still, Beaty argues that it complied with the spirit of the law, if not the letter. We disagree. The applicable regulation requires that the inspection reports be signed by the inspector. Beaty admits that this was not always done in its inspection reports. Although Beaty claims that this irregularity was at most a *de minimis* violation, this is precisely why the safety report cited Beaty for a non-serious violation and issued no fine.

Affirmed.

RILEY, J., and KIRSCH, J., concur.

### ORDER

Appellées Board Of Safety Review, Indiana Occupational Safety and Health Administration and Indiana Department of Labor, by counsel, have filed a Motion to Publish Decision.

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellees' Motion to Publish Decision is GRANTED. The Court's opinion handed down in this cause on July 7, 2009, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

DARDEN, RILEY, and MATHIAS, JJ., concur.