Anne Waltermann MURPHY, in her official capacity as Secretary of Indiana Family and Social Services Administration, and Patricia Casanova, in her official capacity as Director of the Office of Medicaid Policy and Planning of the Indiana Family and Social Services Administration, Appellants–Defendants,

v.

William CURTIS, Gary Stewart, and Walter Raines, on behalf of themselves and those similarly situated, Appellees–Plaintiffs.

No. 49A04–0909–CV–503.

Court of Appeals of Indiana.

July 21, 2010.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellants.

Gavin M. Rose, ACLU of Indiana, Jacquelyn Bowie Suess, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

Anne Waltermann Murphy, in her official capacity as Secretary of the Indiana Family and Social Services Administration ("FSSA"), and Patricia Casanova, in her official capacity as Director of the FSSA's Office of Medicaid Policy and Planning (collectively "the State"), appeal the Marion Superior Court's grant of summary judgment in favor of William Curtis ("Curtis"), Gary Stewart ("Stewart"), and Walter Raines ("Raines"), on behalf of themselves and those similarly situated (collectively "the Class"). On appeal, the FSSA claims that the trial court erred in granting summary judgment to the Class. The Class cross-appeals and claims that the trial court erred in modifying its original summary judgment order upon the State's motion to correct error.

We reverse and remand.

### Statement of Facts

Before going into the specific facts of the present case, we first present some background regarding the Medicaid disability system. As explained in the first appeal arising from this class action:

> Medicaid is a federal-state cooperative program to provide medical assistance to persons with insufficient resources or income to pay for the services they need. If a state chooses to participate in the program, as Indiana has, it is bound by the statutory and regulatory requirements of the program. In Indiana, FSSA's Medicaid Medical Review Team (MMRT) makes initial eligibility determinations. The MMRT relies on information gathered by county caseworkers who work with the applicant. The applicant is asked for information about his or her medical history, functional limitations, educational background, and employment history.

> A person whose application is denied may ask for a hearing before an administrative law judge (ALJ). Pursuant to FSSA policy, the ALJ will not accept testimony or evidence about disabling conditions at the hearing if that information had not been presented in the application for benefits or assembled by caseworkers.

*Curtis v. Roob,* 891 N.E.2d 577, 579 (Ind. Ct.App.2008), *reh'g denied.*

Turning to the particular facts of this case, in early 2006, plaintiff Curtis filed an application seeking Medicaid disability benefits. In this initial application, Curtis claimed that he had been diagnosed with an orthopedic problem with his wrist. The MMRT denied this application in May 2006, and Curtis did not seek further review of this denial. Instead, in June 2006, Curtis filed another application for Medicaid disability. Pursuant to the advice of his case-worker, Curtis indicated that he suffered from bipolar disorder and attention deficit/hyperactivity disorder ("ADHD") and submitted materials supporting these diagnoses. Curtis did not, however, list his wrist problems or provide any materials supporting his earlier claim of wrist problems. The MMRT again denied Curtis's application for benefits, concluding that the evidence submitted "d[id] not confirm that [his] condition significantly impair[ed] [his] ability to perform labor, services, or engage in a useful occupation." Appellant's App. p. 61.

Curtis sought further review of this denial by asking for a hearing before an ALJ. At the ALJ hearing, Curtis attempted to submit evidence regarding a diagnosis of bone and joint pain and arthritis, as well as the letter showing that his initial application for benefits, which had been based on his claim of wrist problems, had been denied by the MMRT. The ALJ refused to consider this evidence, concluding that any evidence relating to a condition other than that claimed in the most current application, i.e. bipolar disorder and ADHD, were not properly before the ALJ because they were not listed on the application that was the subject of the current appeal. The ALJ did, however, consider additional evidence regarding the conditions Curtis listed on the current ap-

plication, i.e. bipolar disorder and ADHD. The ALJ ultimately concluded that the evidence presented by Curtis did not support his claim for benefits.

Plaintiff Stewart first applied for Medicaid disability benefits in September 2006, claiming in his application that he suffered from foot problems, arthritis, stress and panic, and prostate problems. He also submitted evidence indicating that he suffered from sleep apnea. The MMRT reviewed this application and summarized Stewart's conditions as osteoarthritis and depression. The MMRT denied Stewart's claim in December 2006. Stewart sought review by an ALJ. At the ALJ hearing, Stewart submitted a sleep apnea study that he had not submitted to the MMRT, which the ALJ took into consideration because "sleep apnea [wa]s documented as a diagnosis in the original evidence, which condition the [MMRT] did not consider, but which the [ALJ] c[ould] consider as it is part of the original record." Appellant's App. p. 70. Stewart also presented evidence indicating that he suffered from congestive heart failure, mitral and tricuspid regurgitation, and morbid obesity. The ALJ refused to consider these conditions as they related to Stewart's current application and instead suggested that Stewart re-apply for benefits based on these conditions. Ultimately, the ALJ affirmed the MMRT's decision denying Stewart's application.

Plaintiff Raines applied for Medicaid disability benefits in December 2006, claiming that he suffered from back pain. The MMRT denied this application in February 2007, and Raines sought review by an ALJ. At the ALJ hearing, Raines presented evidence that he had been hospitalized for substance abuse and a suicide attempt. The ALJ refused to consider this evidence because it was not related to the conditions included in Raines's initial

application for benefits. The ALJ affirmed the MMRT's denial of benefits.

### Procedural History

On July 23, 2007, the plaintiffs in this case filed an action seeking declaratory and injunctive relief along with a motion seeking class certification. The parties eventually entered into a stipulation to class certification, which the trial court accepted on August 27, 2007.[1] On January 7, 2008, the trial court granted the State's motion to dismiss the action pursuant to Trial Rule 12(B)(6), accepting the State's claim that the Class failed to state a claim upon which relief could be granted. The Class appealed, and on July 25, 2008, this court reversed the trial court's decision and remanded the case for further proceedings. *See Curtis*, 891 N.E.2d at 581. We concluded:

> In light of the purpose behind the Medicaid fair hearing regulations—to ensure that applicants have an opportunity to present evidence supporting their claims for benefits—and the authority to the effect the "de novo hearing" required by the regulations is one where additional evidence may be received, we cannot say the facts alleged in the complaint are "incapable of supporting relief under any set of circumstances." The complaint therefore should not have been dismissed and we must accordingly reverse.

*Id.* (citation omitted).

On remand, the Class filed a motion for summary judgment on November 3, 2008. The State filed its response on January 2, 2009. On April 16, 2009, the trial court granted the Class's motion for summary judgment, concluding that:

> [I]t seems clear that the policy used by ALJs to exclude any evidence not alleged in the original application but which could prove that the claimant is entitled to Medicaid benefits is ... fundamentally unfair. When the ALJs follow the policy of not considering additional evidence not alleged in the original application, they are not able to comply with their "duty to inquire." This is even more necessary or compelling when claimants are of limited means, little education, and suffer from mental disabilities.

Appellant's App. p. 43. The trial court further concluded that the State did "not have the right to exclude evidence that is relevant to whether an applicant is qualified for the program but irrelevant to whether he or she possesses the precise disabilities that were reported at the time of application[.]" *Id.* at 46. The trial court ordered the State to provide the named plaintiffs and all class members with notice of the court's decision and give them an opportunity to request a new ALJ hearing at which new evidence could be presented. On May 15, 2008, the State filed a motion to correct error. Following a hearing on the State's motion, the trial court affirmed its original judgment, but modified its order such that the State was not required to notify unnamed members of the class regarding the court's decision. The State filed a notice of appeal on September 3, 2009.

### Standard of Review

We review a summary judgment order de novo. *Kovach v. Caligor Midwest*, 913

---

1. The Class was certified as:

 Any and all Medicaid disability applicants who have been or will be denied Medicaid for the Disabled (MA D) and who timely appealed or will timely appeal that denial and who sought or will seek to introduce evidence at the hearing before an [ALJ] of disabilities or disabling conditions that were not alleged in the application packet, which includes but is not limited to State Form 0251B.

 Supplemental App. p. 1.

N.E.2d 193, 196 (Ind.2009). "Considering only those facts supported by evidence that the parties designated to the trial court, we must determine whether there is a genuine issue as to any material fact' and whether the moving party is entitled to a judgment as a matter of law.'" *Id.* at 196–97 (citing Ind. Trial Rule 56(C)). We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *Id.* at 197.

We also note that the interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself. *Beaty Constr., Inc. v. Bd. of Safety Review,* 912 N.E.2d 824, 828 (Ind.Ct.App.2009). If we determine that an administrative agency's interpretation is reasonable, we should terminate our analysis and not address the reasonableness of the other party's interpretation. *Id.* "Terminating the analysis recognizes the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations.'" *Shaffer v. State,* 795 N.E.2d 1072, 1076 (Ind.Ct.App.2003) (quoting *Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n,* 695 N.E.2d 99, 105 (Ind.1998)).

## Discussion and Decision

The State claims that the trial court erred in concluding that the Class was entitled to summary judgment, arguing that the FSSA's policy of refusing to consider evidence unrelated to the conditions presented in the applications does not constitute a denial of due process of law as claimed by the Class. The Class counters that the State's current argument is precluded by both waiver and the law of the case doctrine.

*A. Waiver*

■ The Class claims that the State has waived its current appellate argument by failing to timely respond to the Class's motion for summary judgment. If a party fails to respond to a motion for summary judgment thirty days by either designating evidence demonstrating issues of material fact, filing an affidavit under Trial Rule 56(F) indicating why the facts necessary to justify opposition are unavailable, or requesting an extension of time under Trial Rule 56(I) in which to file his response, then the trial court lacks discretion to permit that party to thereafter file a response. *Desai v. Croy,* 805 N.E.2d 844, 849 (Ind.Ct.App.2004), *trans. denied; accord HomEq Servicing Corp. v. Baker,* 883 N.E.2d 95, 98 (Ind.2008).

■ Here, the State apparently concedes that it did not timely respond to the Class's motion for summary judgment, but denies that its entire argument is waived for purposes of appeal. We agree. As noted by the State, a party who files for summary judgment bears the risk that summary judgment may be entered in favor of the non-moving party, even when the non-moving party has not filed a cross-motion for summary judgment. *See Shah v. Harris,* 758 N.E.2d 953, 955 (Ind.Ct.App.2001); Ind. Trial Rule 56(B). As such, even a party who failed to respond to a motion for summary judgment could have summary judgment entered in his favor.

■ Further, a trial court is not required to grant an unopposed motion for summary judgment. *Parks v. State,* 789 N.E.2d 40, 48 (Ind.Ct.App.2003), *trans. denied.* "In other words, summary judgment is awarded on the merits of the motion, not on technicalities. This principle is emphasized elsewhere in [Trial Rule

56](C), where it states, [s]ummary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits of evidence, but the court shall make its determination from the evidentiary matter designated to the court.' " *Id.*

If a party is not required to respond to a motion for summary judgment at all, and if a party who fails to timely respond to a motion for summary judgment may still have summary judgment entered in his favor, we are unwilling to say that a party who fails to timely respond to a motion for summary judgment has, for purposes of appeal, waived any argument regarding the propriety of summary judgment. While a party who does not respond to a motion for summary judgment may be limited to the facts established by the movant's submissions, such failure to respond does not preclude argument of the relevant law on appeal.

### B. Law of the Case

 The Class further claims that the State's current appellate argument is precluded by the law of the case doctrine. The law of the case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the appellate court in any subsequent appeal involving the same case and substantially the same facts. *Dutchmen Mfg., Inc. v. Reynolds,* 891 N.E.2d 1074, 1082 (Ind.Ct. App.2008), *trans. denied.* The purpose of the doctrine is to minimize unnecessary relitigation of legal issues once they have been resolved by an appellate court. *Id.* This doctrine is based upon the sound policy that once an issue is litigated and decided, that should be the end of the matter. *Godby v. Whitehead,* 837 N.E.2d 146, 152 (Ind.Ct.App.2005), *trans. denied.* However, unlike the doctrine of res judicata, the law of the case doctrine is a discretionary tool. *Reynolds,* 891 N.E.2d at 1082. To invoke this doctrine, the matters decided in the earlier appeal must clearly appear to be the only possible construction of an opinion. *Id.* at 1082–83. Thus, questions not conclusively decided in the earlier appeal do not become the law of the case. *Id.* at 1083.

In our earlier opinion, we held:

> In light of the purpose behind the Medicaid fair hearing regulations—to ensure that applicants have an opportunity to present evidence supporting their claims for benefits—and the authority to the effect the "de novo hearing" required by the regulations is one where additional evidence may be received, *we cannot say the facts alleged in the complaint are "incapable of supporting relief under any set of circumstances."* The complaint therefore should not have been dismissed and we must accordingly reverse.

*Curtis,* 891 N.E.2d at 581 (emphasis added) (citation omitted).

On remand, the Class designated evidence supporting the allegations in their complaint, and the State did not submit any contradictory evidence. Thus, there now can be no genuine issue of material fact. But this does not mean that the Class must prevail, for to prevail on summary judgment, the moving party must establish *both* that there are no genuine issues of material fact *and* that they are entitled to judgment as a matter of law. *See* T.R. 56(C). We held before that the facts alleged in the complaint were not incapable of supporting relief under any set of circumstances. *Curtis,* 891 N.E.2d at 581. This is not the same as saying that, once the facts alleged were established, the Class was entitled to judgment as a matter of law. Because of the different standards governing review of a motion to dismiss under Rule 12(B)(6) and a

motion for summary judgment under Rule 56(C), we cannot say that the State's current appellate argument is precluded by operation of the law of the case doctrine.

### C. Merits of State's Argument

The State claims that the trial court erred in concluding that ALJs are required to consider evidence unrelated to the conditions listed in the application for benefits being reviewed by the ALJ. As we explained in our earlier opinion:

> A state's Medicaid hearing system must provide for a hearing before the agency or an evidentiary hearing at the local level, with a right to an appeal hearing. 42 C.F.R. § 431.205. The hearing system must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and any additional standards specified in the controlling federal regulations. 42 C.F.R. § 431.205(d). The *Goldberg* procedural due process requirements include "an effective opportunity [for the claimant] to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." 397 U.S. at 267–68, 90 S.Ct. 1011.

> 42 C.F.R. § 431.232 provides if the decision of a local evidentiary hearing is adverse to the applicant or recipient, the agency must "[i]nform the applicant or recipient of his right to request that his appeal be a de novo hearing." (Emphasis supplied). Under § 431.240,

> If the hearing involves medical issues such as those concerning a diagnosis, an examining physician's report, or a medical review team's decision, and if the hearing officer considers it necessary to have a medical assessment other than that of the individual involved in making the original decision, such a medical assessment must be obtained at agency expense and made part of the record.

> Under § 431.242, the applicant must be given an opportunity to:

> (a) Examine at a reasonable time before the date of the hearing and during the hearing:

> (1) The content of the applicant's or recipient's case file; and

> (2) All documents and records to be used by the State or local agency or the skilled nursing facility or nursing facility at the hearing;

> (b) Bring witnesses;

> (c) Establish all pertinent facts and circumstances;

> (d) Present an argument without undue interference; and

> (e) Question or refute any testimony or evidence, including opportunity to confront and cross-examine adverse witnesses.

*Curtis,* 891 N.E.2d at 579–80.

We also noted that "due process, and the Medicaid regulations, require a de novo hearing." *Id.* at 580. This "de novo hearing" "is not to be adversarial'—instead, the goal of the agency is to assure that claimants who deserve benefits get them." *Id.* (citing *Gomolisky v. Davis,* 716 N.E.2d 970, 974 (Ind.Ct.App.1999) (holding that the purpose behind Medicaid fair hearing regulations is to ensure applicants have an opportunity to present evidence supporting their claims for benefits)). And a "de novo hearing" is not the same as "de novo review." *Id.* "Under 'de novo review,' the appellate court steps into the trial court's position, reviews the same trial record, and redecides the issue, determining whether the trial court's decision was right or wrong." *Id.* (citing *Hutch v. State,* 107 Hawai'i 411, 114 P.3d 917, 920 (2005)). In contrast, a "de novo hearing"

is generally not limited to the record below. Our Supreme Court said in *Russell v. Johnson,* 220 Ind. 649, 655, 46 N.E.2d 219, 221 (Ind.1943), "A review by the full [Industrial Board] is on the merits and is not for errors. The hearing is de novo as to all parties to the proceeding and the award of the full board supersedes for all purposes the award of the hearing member."
*Curtis,* 891 N.E.2d at 580–81.

▮ The Class argues, and the trial court agreed, that the State may not limit the scope of the ALJ hearing to cover only those conditions listed in the application being reviewed because the applicable regulations require a de novo hearing, and because Indiana Code section 12–15–28–4 provides that "the applicant and county office may introduce additional evidence" at the ALJ hearing.

We agree with the Class that the applicable statutes and regulations require the ALJ review hearings to be non-adversarial, de novo hearings at which parties must be provided the opportunity to present "additional evidence." However, we do not agree with the Class that these propositions, as applied to the undisputed facts of the present case, establish that the Class is entitled to judgment as a matter of law.

We do not read Indiana Code section 12–15–28–4 to require an ALJ to consider "additional evidence" if that additional evidence is unrelated to the conditions listed in the application being reviewed. Certainly, an ALJ must consider additional evidence that is relevant to the conditions listed in the application being reviewed. But this section does not require the ALJ hearing to be an open-ended inquiry into every conceivable condition an applicant might suffer from.

Furthermore, simply because due process and the applicable regulations require a de novo hearing does not mean that the scope of the hearing must be expanded to include every possible condition that the applicant claims could result in benefits. A de novo hearing does not require the consideration of materials unrelated to the issue appealed. Otherwise, the need for an initial application and review by the MMRT would be essentially superfluous.[2]

Our earlier opinion stated that applicants must be provided " 'an effective opportunity ... to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.' " *Curtis,* 891 N.E.2d at 580 (citing *Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)). However, providing such an "effective opportunity" does not require an ALJ to consider evidence regarding conditions not in the application currently being reviewed. We conclude that the ALJs acted within their discretion in limiting their consideration to the evidence relating to the conditions listed in the application being reviewed.

As noted by the State, 42 C.F.R. § 431.241(a) provides that the review hearing "must cover—(a) *Agency action* or failure to act with reasonable promptness on a claim for services, including both initial and subsequent decisions regarding eligibility." (emphasis added). The "agency action" under review in the present case was the MMRT's denial of the plaintiffs' Medicaid disability applications. The ALJ hearings afforded by the State provided

---

2. The relief ordered by the trial court here demonstrates this. The trial court ordered that if additional medical evidence unrelated to the conditions listed in the application were presented to an ALJ, the ALJ was to "remand" the case to the MMRT. We fail to see how this is substantially different than simply requiring the applicant to file a new application, list all relevant conditions, and start the review process over again.

effective review of these applications, and reasonably limited the scope of the hearings to the conditions presented in the application for benefits and reviewed by the MMRT.

## Conclusion

Under the facts and circumstances before us, we cannot say that the FSSA's interpretation of the applicable statutes and regulations is unreasonable, violative of any of the cited statutes or regulations, or otherwise constitutes a denial of due process. We therefore reverse the trial court's entry of summary judgment in favor of the Class and remand with instructions to enter judgment in favor of the State.[3]

Reversed and remanded.

BRADFORD, J., concur.

RILEY, J., dissents with opinion.

RILEY, Judge, dissenting with separate opinion.

I respectfully dissent from the majority's opinion reversing the trial court's grant of summary judgment in favor of the Class. While I join the majority with respect to the Class' waiver and law of the case argument, I part ways with the majority's conclusion that an ALJ's refusal to consider evidence of conditions not disclosed on a Medicaid disability application does not violate federal Medicaid law and the Due Process Clause of the Fourteenth Amendment.

The fundamental requisite of due process of law is the opportunity to be heard. *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). This opportunity to be heard must be conducted at a meaningful time and in a meaningful manner. *See id.*

There is a basic obligation on the ALJ in these nonadversarial proceedings to develop a full and fair record, which obligation rises to a special duty ... to scrupulously and conscientiously explore for all relevant facts....

The [ALJ's] duty to inquire takes on special urgency where ... the claimant has little education and limited fluency in English, and, given that the claimant already has a right to a hearing, the additional cost of pursuing relevant issues at the hearing is minimal.

*Heckler v. Campbell,* 461 U.S. 458, 471, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (Brennan, J., concurring). Thus, the duty of the ALJ is not one of advocacy but "one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Henrie v. U.S. Dep't. of Health and Human Serv.,* 13 F.3d 359, 361 (10th Cir. 1993). Moreover, the opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard. *Goldberg,* 397 U.S. at 268–69, 90 S.Ct. 1011.

I believe that the current policy used by the ALJ to exclude any evidence not alleged in the original application but which could establish that the applicant is nevertheless entitled to benefits not only violates our basic notions of due process but also an ALJ's duty to inquire. The very purpose of the Medicaid administrative hearing is to determine an applicant's eligibility to receive assistance. *See, e.g., Curtis v. Roob,* 891 N.E.2d 577, 581 (Ind.Ct. App.2008); *Albert S. v. Dep't. of Health & Mental Hygiene,* 891 A.2d 402, 415 (Md. Ct.Spec.App.2006). This duty increases in

---

**3.** Because we reverse the trial court's entry of summary judgment, we do not address the issues regarding the propriety of the relief ordered by the trial court or the Class's cross-appeal regarding the notice to be given to unnamed members of the Class.

urgency where, as here, the applicant often possesses limited means, little education, and—in some instances—reduced mental capabilities. This duty becomes even more strenuous when the ALJ is considering information collected by the applicant's caseworker. As explained by Justice Brennan in *Goldberg:*

> It is not enough that a welfare recipient may present his position to the decision maker in writing or second-hand through his caseworker. Written submissions are an unrealistic option for most recipients, who lack the educational attainment necessary to write effectively and who cannot obtain professional assistance. Moreover, written submissions do not afford the flexibility of oral presentations; they do not permit the recipient to mold his argument to the issues the decision maker appears to regard as important....
>
> The second-hand presentation to the decision maker by the caseworker has its own deficiencies; since the caseworker usually gathers the facts upon which the charge of ineligibility rests, the presentation of the recipient's side of the controversy cannot safely be left to him.

*See Goldberg,* 397 U.S. at 269, 90 S.Ct. 1011.

Moreover, the State's refusal to permit the introduction of additional evidence at the administrative Medicaid hearing forces an applicant to diagnose his or her own conditions at the time he or she first applies for assistance. This results in further hurdles as at the time the application for Medicaid assistance is submitted, an applicant may not consider his or her condition to constitute a disability—regardless if they were previously aware of these conditions. In the documented cases before us, Steward was not diagnosed with morbid obesity until after his initial application even though obesity is recognized as a disabling condition that may warrant Medicaid assistance. *See, e.g., Clifford v. Apfel,* 227 F.3d 863, 873 (7th Cir.2000).

In a disability hearing, the goals of the agency and the advocates should be the same: that deserving applicants who apply for benefits receive justice. *Cunningham v. Apfel,* 222 F.3d 496, 501 n. 6 (8th Cir. 2000). In light of this overarching objective, I conclude that the ALJ's duty of inquiry is not suspended when the applicant fails to list a particular disability in his or her application or raises it for the first time during the administrative hearing; rather, an ALJ is obligated to investigate the disabling effects of each possible impairment suggested by the record and which may be relevant in order to reach an informative conclusion as to whether the applicant is eligible to receive assistance. Today's majority decision falls well short of this goal. I would affirm the trial court's decision.