

**FILED**

Mar 31 2015, 10:30 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Peter H. Drumm | Kevin M. Quinn |
| Benadum, Cecil & Drumm | Bose McKinney & Evans, LLP |
| Muncie, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rapkin Group, Inc., as a minority member on behalf and for the benefit of The Eye Center Group, LLC, and Surgicenter Group, LLC, | March 31, 2015 |
| | Court of Appeals Case No. 18A02-1408-CT-563 |
| *Appellant-Plaintiff,* | Appeal from the Delaware Circuit Court |
| v. | The Honorable Thomas A. Cannon, Judge |
| Cardinal Ventures, Inc., successor in interest to Cardinal Health Partners, LLC, | Cause No. 18C05-1007-CT-009 |
| *Appellee-Defendant.* | |

**Mathias, Judge.**

[1] Rapkin Group, Inc. ("Rapkin") appeals the order of the Delaware Circuit Court granting summary judgment in favor of Cardinal Ventures, Inc. ("Cardinal"), in a shareholder derivative suit brought by Rapkin on behalf of The Eye Center

Group, LLC ("ECG") and Surgicenter Group, LLC ("SCG") against Cardinal, in which Cardinal was alleged to have breached a fiduciary duty and committed constructive fraud upon ECG and SCG. On appeal, Rapkin claims that genuine issues of material fact precluded the grant of summary judgment.

We reverse and remand.

## Facts and Procedural History

The underlying facts of this case were set forth in our earlier memorandum decision involving the same lawsuit:

> ECG/SCG are closely-held, limited liability companies incorporated in April of 1994.[1] Cardinal Health Partners ("Cardinal Health")[2] owned 21.93% of ECG and 33.07% of SCG. The balance of the shares between the two companies were owned by ophthalmologists and optometrists, including Rapkin, whose principal member is Dr. Jeffrey Rapkin ("Dr. Rapkin"). Dr. Roch was chief executive officer of ECG/SCG from its founding in 1994 until July 31, 1999. ECG/SCG had two long time employees: D. Frank [Winconek] ("[Winconek]"),[3] who held the positions of assistant administrator and director of finance before being promoted to chief executive officer, and Stephanie Carrick ("Carrick"), who held many positions with ECG/SCG culminating with her appointment as the company's chief financial officer. Dr. Watkins joined ECG/SCG in 2004 and was invited to become an owner and a member of the board of directors in December of 2005.
>
> Around July of 2007, some of the ophthalmologists and optometrists voiced a desire to share in more of the companies' profits because of

---

[1]Though the companies have separate names and operating agreements, both appear to be managed as one company.

[2]Cardinal Ventures is the successor in interest to Cardinal Health. Throughout this opinion, we will refer to both as "Cardinal" unless it is necessary to distinguish between the two entities.

[3]Our prior opinion misspelled Winconek's name as "Winecock."

the amount of work they were doing. Hoping to improve relations within the company, Cardinal Health sold some of its shares to the ophthalmologists and optometrists. Rapkin purchased additional shares at this time. Dr. Roch did not sell any of his shares to the ophthalmologists and optometrists nor did he purchase any shares offered by Cardinal Health.

Blue and Co., LLC ("Blue") performed yearly audits of ECG/SCG's finances. The usual practice was for Blue to present its findings to [Winconek] and Carrick. [Winconek] and Carrick would then report those findings to the board of directors. In 2007, Blue submitted the 2006 financial report after April 15th, causing some physicians to file extensions for their tax returns. Though the reports were submitted late, [Winconek] and Carrick mentioned no problems when presenting the report to the board of directors.

ECG/SCG hired a new auditing firm in 2008; Katz, Sapper & Miller ("KSM"). On March 14, 2008, KSM submitted a partial financial report for 2007. This was due in part to ECG/SCG converting their accounting methods. After the board received the completed report, Dr. Watkins reviewed it with her husband and noticed some inconsistencies. Because of those inconsistencies, Dr. Watkins sent an email to [Winconek] and Carrick with questions about the report. She also requested to see ECG/SCG's current balance sheets. About the same time, ECG/SCG began experiencing difficulties paying quarterly salaries and dividends on time. [Winconek] and Carrick told the board of directors that the problems were due to accounting errors and delayed payments from commercial payers. Dr. Watkins did not receive the requested balance sheets until around November 2008. At the same time, [Winconek] sent an email to the board of directors expressing confidence in the finances of the company. However, Dr. Watkins's review of the balance sheets she received showed inconsistencies in the companies' debt to equity ratio.

In January of 2009, Dr. Watkins and fellow board director Robert Gildersleeve ("Gildersleeve") spent several hours reviewing the balance sheets. Their review led them to talk to KSM directly about the companies' finances. On or about January 12, 2009, [Winconek]'s administrative assistant, Melita Flowers, informed Dr. Watkins that a staff accountant at ECG/SCG had hired an attorney to discuss concerns about the financial practices at the companies. On January 29, 2009, Dr. Watkins spoke with Jennifer Abrell ("Abrell"), counsel

for ECG/SCG. Dr. Watkins wanted to set up a meeting with the accountants at KSM to discuss ECG/SCG's financial state. Abrell informed Dr. Watkins that KSM also desired to meet with company leadership to discuss its concerns about [Winconek] and Carrick.

On February 3, 2009, Dr. Watkins, Gildersleeve, and Abrell met with KSM. KSM conveyed its concerns regarding improper accounting practices to the board of directors. KSM told the directors that it would need access to all of ECG/SCG's accounting records to confirm its suspicions. The next day, the board of directors placed [Winconek] on personal leave and gave KSM all of the information requested to perform its investigation. The directors and a representative of KSM also met with Carrick. At that meeting, Carrick revealed that she and [Winconek] engaged in fraudulent practices with the companies' finances. KSM's investigation revealed that the company had no cash on hand, little available lines of credit for operations, and flawed financial reporting. Specifically, KSM found that the financial reports for ECG/SCG contained intentionally overstated figures for accounts receivable, inventory, and unapplied cash. ECG and SCG had been insolvent since December 2006 and July 2008 respectively. Proceeds from loans rather than profits from company operations were used to pay salaries and dividends, making shares in the company virtually worthless. The board of directors terminated [Winconek] on February 18, 2009 and Carrick on March 13, 2009.

*Rapkin Grp., Inc. v. Roch*, 2014 WL 808866, No. 18A02-1302-CT-193, slip op. at 2-5 (Ind. Ct. App. Feb. 27, 2014)*, trans. denied* ("*Rapkin I*").[4]

[4] Rapkin filed a complaint on April 28, 2010, alleging that Dr. Roch, Dr. Watkins, Cardinal, Winconek, Carrick, and Blue's "willful misconduct, recklessness, breach of fiduciary duty, mismanagement and/or fraud" caused Rapkin to lose the value of its investment in the LLCs. On the defendants' motion, the trial court dismissed this claim as a direct action, and Rapkin

---

[4]Winconek ultimately pleaded guilty to five counts of Class D felony theft. *See Winconek v. State*, No. 18A05-1204-CR-184 (Ind. Ct. App. Sept. 20, 2012).

thereafter filed an amended complaint as a shareholder derivative action but with substantially the same claims.

[5] Several of the defendants filed motions for summary judgment. At issue in our earlier decision was the motion for summary judgment filed by Drs. Roch and Watkins on April 7, 2012. The trial court granted this motion for summary judgment, and Rapkin appealed. In our memorandum decision, we affirmed the trial court's judgment, concluding that the designated evidence demonstrated: (1) that Dr. Roch[5] made no statement that was relied upon by Rapkin; (2) that Dr. Roch did not know about the LLCs' precarious financial situation or the fraudulent acts committed by Winconek and Carrick; and (3) that neither Dr. Roch nor Dr. Watkins breached a fiduciary duty to Rapkin. *Id.* at 9-13.

[6] On March 26, 2013, after our memorandum decision in *Rapkin I* was issued, Cardinal filed a motion for summary judgment. The trial court granted Cardinal's motion on July 31, 2014, and Rapkin now appeals.

## Summary Judgment Standard of Review

[7] The standard of review we apply on review of a trial court's order granting or denying summary judgment is well settled:

> We review summary judgment de novo, applying the same standard as the trial court: Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate if the

[5]Rapkin conceded on appeal that Dr. Watkins committed neither actual nor constructive fraud. *Id.* at 7.

designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences. The initial burden is on the summary-judgment movant to demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with contrary evidence showing an issue for the trier of fact. And [a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court.

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (citations omitted).

## Discussion and Decision

[8] On appeal, Rapkin claims genuine issues of material fact with regard to whether: (A) Cardinal breached a fiduciary duty owed to the LLCs, and (B) Cardinal committed constructive fraud upon the LLCs. We address each contention in turn.

### A. Breach of Fiduciary Duty

[9] Rapkin first claims a genuine issue of material fact with regard to whether Cardinal breached a fiduciary duty owed to the LLCs. As we explained in *Rapkin I,* a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of that duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary. *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010), *trans. denied*. It does not appear Cardinal denies that, as a shareholder and

director of a closely held corporation, it owed a fiduciary duty to the other shareholders, including Rapkin. Instead, at issue is whether Cardinal breached this fiduciary duty.

[10] The standard imposed by a fiduciary duty is the same whether it arises from the capacity of a director, officer, or shareholder in a closely held corporation. *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 240 (Ind. 2001). The fiduciary has a duty to deal fairly, honestly, and openly with his corporation and fellow stockholders and must not be distracted from the performance of his official duties by personal interests. *Id.* As explained in *Boehm:*

> Although directors must act with absolute good faith and honesty in corporate dealings, Indiana Code section 23-1-35-1(e) provides that:
>
>> [a] director is not liable for any action taken as a director, or any failure to take action, unless: (1) the director has breached or failed to perform the duties of the director's office in compliance with this section; and (2) the breach or failure to perform constitutes willful misconduct or recklessness.
>
> In other words, Indiana has statutorily implemented a strongly pro-management version of the business judgment rule. A director is not to be held liable for informed actions taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes. The rule includes a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. By statute, negligence is insufficient to overcome the presumption; recklessness or willful misconduct is required.

*Id.* at 238 (citations and quotations omitted).

[11]     In the present case, Rapkin claims that he designated evidence sufficient to establish a genuine issue of material fact with regard to Cardinal's knowledge of the precarious financial state of the LLCs. Specifically, Rapkin refers to Winconek's affidavit in which he averred that Gildersleve, the director of the LLCs appointed by Cardinal, was aware that the LLCs had been required to borrow money to pay dividends to the shareholders from 2006 to 2009. Rapkin also notes that Cardinal began to divest itself of shares of the LLCs during this same time, ultimately reducing its holdings from a 45.67% interest to a 28.05%. From this, Rapkin claims that a reasonable inference can be drawn that Cardinal began to divest itself of its shares in the LLCs because of Gildersleve's knowledge of the use of loans to pay the dividends and that Cardinal chose not to disclose to the physician shareholders that the LLCs were using loans to pay the dividends.[6]

[12]     Cardinal, however, claims that Winconek's affidavit is too vague with regard to when Gildersleve knew about the loans, who told him, and whether he knew the extent of the LLCs' indebtedness. We disagree. Winconek's affidavit, while

---

[6]Cardinal claims that Rapkin may not now argue any facts inconsistent with those set forth in our decision in *Rapkin I* under the law-of-the-case doctrine. Generally speaking, the law-of-the-case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the appellate court in any subsequent appeal involving the same case and substantially the same facts. *Murphy v. Curtis*, 930 N.E.2d 1228, 1234 (Ind. Ct. App. 2010). The law-of-the-case doctrine is based upon the sound policy that once an issue is litigated and decided, that should be the end of the matter. *Id.* However, unlike the doctrine of *res judicata*, the law-of-the-case doctrine is a discretionary tool. *Id.* Moreover, "[w]hen additional information distinguishes the case factually from the case decided in the first appeal, the law of the case doctrine does not apply." *Parker v. State*, 697 N.E.2d 1265, 1267 (Ind. Ct. App. 1998). At issue in the first appeal was Rapkin's claims against Drs. Roch and Watkins. Subsequent to our decision, Rapkin submitted additional designated evidence in support of his claims—specifically, the Winconek affidavit. Because of this additional evidence, we decline to apply the law-of-the-case doctrine. *See id.* (declining to apply the law-of-the-case doctrine to issue of propriety of search and seizure where prior case was based on evidence submitted in pre-trial motion to dismiss, whereas the case at bar was based on additional evidence presented during trial).

not particularly detailed, claims that Gildersleve knew about the LLCs taking out loans in order to pay dividends from 2006 to 2009. Dividends are typically paid out of corporate profits, not loan proceeds. If a corporation is taking out loans to pay dividends, it is reasonable to assume that the corporation is not profitable. To the extent that Cardinal claims that Winconek's affidavit should not be credited because of Winconek's criminal activities as CEO of the LLCs, this is a credibility issue that should be decided at trial, not at summary judgment.

[13]  Cardinal also counters Winconek's affidavit by referring to Gildersleve's affidavit, in which he claims that it was the physician shareholders who indicated a desire to own more shares of the LLCs so that they could claim a larger share of the dividends; Gildersleve also averred that Cardinal decided to sell some of its shares in order to improve its relationship with the physician shareholders. However, this is in direct conflict with the affidavit of Dr. Michael Scanemeo ("Scanemeo"), who stated that it was Gildersleve who encouraged the physician shareholders to purchase additional shares of the LLCs from Cardinal. If, as Rapkin's designated evidence indicates, Gildersleve was encouraging the physicians to purchase more shares at the same time that he knew that the LLCs were borrowing funds in order to pay dividends, a reasonable inference could be drawn that Gildersleve was not dealing openly and honestly with the physician shareholders. To the extent that Gildersleve's affidavit conflicts with the affidavits of Scanemeo and Winconek, these are simply factual issues that are properly resolved at trial, not on summary

judgment. *See Hughley*, 15 N.E.3d at 1004-05 (noting that even a "perfunctory and self-serving" affidavit of dubious credibility can be sufficient to establish a genuine issue of material fact sufficient for trial).

[14] We therefore agree with Rapkin that a genuine issue of material fact exists regarding whether Cardinal, through its appointed director Gildersleve, knew of the precarious financial situation of the LLCs, as evidenced by the need to borrow money to pay dividends, yet still encouraged its fellow shareholders to purchase additional shares from Cardinal, thus breaching a fiduciary duty. *See id*. at 1004 (noting that "defeating summary judgment requires only a 'genuine' issue of material fact—not necessarily a 'persuasive' one.").

*B. Constructive Fraud*

[15] Rapkin also claims a genuine issue of material fact with regard to whether Cardinal committed constructive fraud[7] vis-à-vis Rapkin and the other physician shareholders. As we explained in *Demming v. Underwood*, 943 N.E.2d 878, 892 (Ind. Ct. App. 2011), *trans. denied*, constructive fraud arises by operation of law from a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud. The five elements of constructive fraud are: (i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to

_____

[7]Rapkin makes no cognizable argument on appeal that the trial court erred in granting summary judgment in favor of Cardinal with regard to the claim of actual, as opposed to constructive, fraud.

speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Id.* (citing *Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind. 1996)). A plaintiff alleging the existence of constructive fraud has the burden of proving the first and last of these elements. *Id.* Once a plaintiff satisfies this burden, the burden shifts to the defendant to disprove at least one of the remaining three elements by clear and unequivocal proof. *Id.*

[16] Here, no dispute appears to exist with regard to the first element, i.e., the existence of a fiduciary duty between the shareholders of a closely held corporation. *See Boehm*, 743 N.E.2d at 240. Rapkin claims that the designated evidence is also sufficient to create a genuine issue of material fact with regard to the last element, i.e., whether Cardinal gained an advantage at the expense of the physician shareholders. Again, we are inclined to agree. Winconek's and Scanemeo's affidavits support a reasonable inference that Gildersleve knew about the precarious financial condition of the LLCs and, instead of informing the physician shareholders of this information, encouraged them to purchase more shares, thus divesting Cardinal of a substantial portion of its interest in the insolvent LLCs. The existence of a fiduciary duty and the gaining of an advantage are the only two elements that Rapkin is required to prove. *See Demming*, 943 N.E.2d at 892.

[17] Still, Rapkin's designated evidence would also support an inference with regard to the remaining elements of constructive fraud. If Gildersleve knew that the

LLCs were borrowing money to pay dividends, yet still encouraged the physician shareholders to purchase shares from Cardinal, this could be seen as a violation of the fiduciary duty by remaining silent when he should have spoken. Also, Scanemeo's affidavit supports a reasonable inference that the physician shareholders purchased shares in reliance on Gildersleve's encouragement to do so, which ultimately resulted in Cardinal selling what were essentially worthless shares for over $1.6 million.

[18] Given this designated evidence, we must conclude a genuine issue of material fact does exist with regard to whether Cardinal, through Gildersleve, committed constructive fraud on the physician shareholders. This is not to be taken as a comment on the strength of Rapkin's case. As our supreme court explained in *Hughley*:

> Summary judgment is a desirable tool to allow the trial court to dispose of cases where only legal issues exist. But it is also a blunt . . . instrument, by which the non-prevailing party is prevented from having his day in court[.] We have therefore cautioned that summary judgment "is not a summary trial; and the Court of Appeals has often rightly observed that it is not appropriate merely because the non-movant appears unlikely to prevail at trial. In essence, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.

*Hughley*, 15 N.E.3d at 1003-04 (citations and internal quotations omitted). All we hold is that Rapkin's designated evidence is sufficient to create genuine issues of material fact with regard to the issues of whether Cardinal breached a fiduciary duty and committed constructive fraud.

## Conclusion

The evidence designated by Rapkin is sufficient to create genuine issues of material fact with regard to whether Cardinal breached a fiduciary duty owed to its fellow shareholders and with regard to whether Cardinal committed constructive fraud by remaining silent about the LLCs financial state and encouraging its fellow shareholders to purchase worthless shares of the LLCs. Accordingly, we reverse the order granting summary judgment in favor of Cardinal and remand for proceedings consistent with this opinion.

Reversed and remanded.

Najam, J., and Bradford, J., concur.